IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| DENISE GREEN, now known as Denise Nolden,<br>    Plaintiff,<br><br>v.<br><br>THE ILLINOIS DEPARTMENT OF HUMAN SERVICES,<br>    Defendant. | Case No. 21-cv-3030 |

OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Defendant Illinois Department of Human Services' Motion for Summary Judgment [Doc. 26].

I.    INTRODUCTION

Plaintiff Denise Nolden, formerly known as Denise Green, filed a complaint asserting that her employer, The Illinois Department of Human Services ("Defendant" or "IDHS"), discriminated against her on the basis of race, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(b). (Doc. 1). Defendant alleges Plaintiff did not file suit within 90 days of receiving a "right to sue" notice from the Equal Employment Opportunity Commission ("EEOC"). (Doc. 26-1 at 8). Defendant further contends Plaintiff cannot establish a prima facie case of discrimination for multiple reasons. (*Id.* at 8-16). In response, Plaintiff asserts her complaint was timely filed and there exists ample evidence that she was treated differently because of her race. (Doc. 28).

## II. FACTUAL BACKGROUND

Plaintiff, who is African-American/Black, was at all relevant times employed with the IDHS in the role of Public Service Administrator, Option 6 ("PSA-6"), within the Division of Mental Health. (Doc. 26-1 at 2). On April 14, 2016, Plaintiff began a temporary assignment as a Senior PSA in the position of Executive Director for Regions 3 & 4, which was later extended to December 31, 2017. (*Id.*) Pursuant to union agreement, IDHS had discretion to assign an employee to perform the duties of another position classification as a temporary assignment, for which the employee would receive assignment pay, but a temporary assignment could not exceed nine months unless mutually agreed upon. (*Id.*)

On November 20, 2017, Diana Knaebe, Director of the Division of Mental Health, informed Plaintiff that she would be relocated from McFarland Mental Health Center ("McFarland") in January of 2018 to the Springfield Central Office due to space/operational needs. (*Id.* at 3). Defendant alleges that since 2016 through the relevant time period, the Division of Mental Health had been undergoing a broader restructuring, where clinical staff would be relocated to McFarland and regional staff would be relocated to the central office. (*Id.*) Plaintiff disputes this allegation on the basis that only one other individual, Pat Hayes, who requested the move, also moved to the Central Office. (Doc. 28 at 3).

On December 12, 2017, Christina McLemore, the Chief of Staff of the Division of Mental Health, notified Plaintiff that her temporary assignment position would end as of December 31, 2017, because her temporary assignment had been extended longer than allowed, and that her former position would become effective on January 1, 2018, along

with her former duties and salary. (Doc. 26-1 at 3). McLemore, who began working for IDHS on February 16, 2016, was never Plaintiff's immediate supervisor. (*Id.*) Plaintiff was not the only person whose temporary assignment position ended because it had lasted longer than allowed. For example, in or around October 2017, Justin Carlin, a Caucasian male, was also removed from a temporary assignment position held since January 2016 for the same reasons. Plaintiff notes that Carlin was reassigned from McFarland. (Doc. 28 at 3). He was an accountant and was not a member of the Regional staff. (*Id.*) In her deposition, Plaintiff testified she understood it was a common practice for IDHS to state that temporary assignments end after a certain amount of time, though she also noted that people in her office had been temporarily assigned to positions for years. (Docs. 26-1 at 3, 28 at 3).

On December 20, 2017, the Office of the Executive Inspector General issued a letter to IDHS informing the agency of the existence of an anonymous complaint concerning the abuse of time by Plaintiff and two other employees. (Doc. 26-4). After receiving the referral, McLemore began to investigate to ascertain whether there was a pattern of abuse to legitimize the complaint. (Doc. 26-1 at 4). Also on December 20, 2017, Plaintiff applied for a PSA-6 position at the Illinois Department of Child and Family Services ("DCFS"). (*Id.*) On January 2, 2018, Plaintiff was informed that she would remain in her Contract Manager PSA job duties and report to her supervisor. (*Id.*) On the same day, Plaintiff told McLemore she was not interested in filling the executive position that she held as a temporary assignment. (*Id.*)

On January 11, 2019, McLemore was informed by the Office of Human Resources that all agencies are required to share with other state agencies looking to possibly hire an employee any important information regarding the person's performance. (*Id.*) The disclosure of pending or past discipline was also required for prospective hires. (*Id.*)

On March 1, 2018, DCFS offered Plaintiff the PSA-6 position, which Plaintiff accepted on March 6, 2018. (*Id.*) On March 16, 2018, McLemore recommended Dordana Ingram be hired to fill the vacant position of Executive Director for Regions 3 & 4. (*Id.*) On March 23, 2018, McLemore notified the Office of Human Resources of the investigation into Plaintiff, with the understanding that they would reach out to notify DCFS. (*Id.* at 5). On March 28, 2018, DCFS informed Plaintiff that the offer for the position was effectively rescinded. (*Id.*)

Defendant's investigation of the Office of Executive Inspector General complaint found that Plaintiff failed to accurately report her actual hours worked for the following dates in 2017: June 7 and 9, July 6, 14, and 20, August 9, 10, 11, 29, and 30, and October 4. (*Id.*) Plaintiff alleges the claimed finding was not supported by the documents she submitted in rebuttal. (Doc. 28 at 4). Both IDHS Administrative Directive 01.02.02.170 Time and Attendance and IDHS Administrative Directive 01.02.03.060 Falsification of Records provide that an employee who falsifies times or attendance records may be subject to discipline up to and including discharge. (Doc. 26-1 at 5). On July 23, 2018, as a result of the investigation, IDHS suspended Plaintiff for 30 days pending termination. (*Id.*) The Illinois Department of Central Management Services ("CMS") conducted a final review of the disciplinary action and determined that there was sufficient cause for a 30-

day suspension, but not enough information to support a discharge. (*Id.*) Plaintiff notes IDHS did not need CMS's approval for a 30-day suspension. (Doc. 28 at 3). Plaintiff challenged the disciplinary action through a union grievance and the 30-day suspension was later reduced to a 10-day suspension. (Doc. 26-1 at 5).

Defendant alleges that, when Plaintiff returned from her suspension, McLemore attempted to secure an office for Plaintiff but Plaintiff was ultimately placed in a cubicle near her supervisor. (*Id.* at 6). Plaintiff alleges there were private offices available when she returned from her suspension but she was not assigned one. (Doc. 28 at 4). McLemore confirmed that Plaintiff's placement in a cubicle workplace did not restrict her from performing any of her job duties, nor did it violate any HIPAA laws. (Doc. 26-1 at 6).

On or around November 27, 2018, Plaintiff filed a charge with the Illinois Department of Human Rights ("IDHR") alleging that she suffered racial discrimination in connection with not receiving the DCFS position, her suspension, pending termination, and a hostile work environment. On November 22, 2019, the IDHR dismissed Plaintiff's charge upon determining there is not substantial evidence to support Plaintiff's allegations of racial discrimination. On October 28, 2020, the EEOC issued Plaintiff a Right to Sue Notice which she received on October 30, 2020. (Doc. 28 at 20). Plaintiff filed this lawsuit on January 27, 2021, 89 days after receiving the notice.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that might affect the outcome of the suit, and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Biggs v. Chic. Bd. of Educ.*, 82 F.4th 554, 559 (7th Cir. 2023) (internal quotation marks and citation omitted). The Court views the evidence and construes all reasonable inferences in favor of the non-movant. *Driveline Systems, LLC v. Arctic Cat, Inc.*, 936 F.3d 576, 579 (7th Cir. 2019). To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture." *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted). "The court does not assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." *Driveline Systems*, 936 F.3d at 579 (internal quotation marks omitted).

### B. Timeliness of Lawsuit

Defendant contends Plaintiff has not demonstrated that she filed suit within 90 days of receiving a "right to sue" letter. A civil action under Title VII must be filed within 90 days of Plaintiff's receipt of a right to sue notice from the EEOC. 42 U.S.C. § 2000e-5(f)(1). While not jurisdictional, Title VII's charge-filing requirement is mandatory. *Fort Bend County v. Davis*, 587 U.S. 541, 551 (2019). Plaintiff's right to sue letter, which is attached to her response to the summary judgment motion, demonstrates that she filed suit within 90 days of receiving the notice. (Doc. 28-10). Therefore, the Court concludes Plaintiff's lawsuit was timely initiated.

### C. Plaintiff's Suspension and any other Adverse Employment Actions

Defendant alleges the only adverse employment action at issue is Plaintiff's suspension for violating IDHS policies and that Plaintiff is unable to establish a prima facie case of discrimination. In response, Plaintiff contends that in addition to her suspension, Defendant engaged in conduct that, when viewed in its entirety, constituted a materially adverse employment action. Specifically, Plaintiff notes she was: (1) inexplicitly reassigned to a different work location which was unrelated to the nature of her work; (2) removed from a temporary assignment which could have continued; (3) warned not to speak with other employees and to remain at her workstation; (4) improperly investigated and terminated from her position; (5) reassigned to a cubicle when other similarly situated individuals were assigned private offices; (6) denied a promotion with DCFS; (7) docked for time McLemore claimed she was not working; and (8) assigned clerical work which required a significant amount of time and which was not a part of her job as a public service administrator. (*Id.*)

An employer is prohibited under Title VII from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To defeat a motion for summary judgment, a plaintiff must present evidence that "would permit a reasonable fact-finder to conclude that [plaintiff] was subjected to an adverse employment action based on a statutorily prohibited factor." *McCurry v. Kenco Logistics Servs., Inc.*, 942 F.3d 783, 788 (7th Cir. 2019). An adverse employment action is a "significant change in employment status, such as hiring, firing

failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Herrnreiter v. Chicago Housing Auth.*, 315 F.3d 742, 744 (7th Cir. 2002). The Seventh Circuit has also observed that "changing the *conditions* in which an employee works in a way that subjects him to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment" can constitute an adverse action. *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017) (quoting *Herrnreiter*, 315 F.3d at 744).

In considering whether an employment discrimination plaintiff has met her burden at summary judgment, courts must evaluate the evidence as a whole. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 766 (7th Cir. 2019). The test is "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Id.* at 765. Title VII Plaintiffs "may prove discrimination in a holistic fashion, by proffering direct or circumstantial evidence of racial discrimination." *Wince v. CBRE, Inc.*, 66 F.4th 1033, 1040 (7th Cir. 2023) (internal quotation marks and citation omitted). Alternatively, Plaintiffs may seek to do this by utilizing the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* Under that method, the plaintiff must show that she was (1) a member of a protected class; (2) performed according to her employer's legitimate expectations; (3) was subjected to an adverse employment action; and (4) similarly situated individuals outside of her protected class were treated more favorably. *Bragg v. Munster Medical Research Foundation*, 58 F.4th 265, 271 (7th Cir. 2023). If the plaintiff meets each element of her prima facie case,

then the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Id.*

Defendant contends it had legitimate, non-discriminatory reasons in support of its treatment of Plaintiff. McLemore's investigation of Plaintiff began following an Office of Executive Inspector General complaint that identified Plaintiff as someone who had been abusing IDHS's time and attendance policy. The investigation found numerous timekeeping discrepancies throughout 2017 and 2018 and resulted in findings of violations relating to time and attendance and falsification of records, which subjected her to discipline up to and including discharge.

In response, Plaintiff notes that the other individual identified in the complaint as abusing IDHS's time policy was Jessena Williams. According to Williams, who is Caucasian, she was neither informed about nor interviewed about the alleged time abuse.

Dan Wasmer, who at the time was the Deputy Director of Regional Operations, stated that he had no role in the investigation of Plaintiff, even though he was normally involved in the process when a subordinate of his was subject to disciplinary investigation. Wasmer believed Plaintiff's time reports to be accurate and approved them. Plaintiff notes that during the investigation, she submitted 90 pages of documents identifying her time usage and the names of individuals who could verify where she was on the dates in question. Ultimately, CMS disapproved McLemore's termination recommendation due to a lack of documentation supporting it.

Plaintiff further notes that Tiffany Clark, an African-American regional director was terminated for time abuse. According to Clark's supervisor, Wasmer, McLemore wanted to terminate Clark. Wasmer was removed from any involvement in Clark's supervision. He had no basis to believe there were any time discrepancies and disagreed with the termination decision. Furthermore, Wasmer stated McLemore informed him she believed that Veronica Trimble, an African-American employee he supervised, was improperly using the state computer and internet. Wasmer believed the allegations to be unfounded. While McLemore accused three African-American employees under Wasmer's supervision of either time abuse or misuse of state equipment, she did not make any similar allegations as to any Caucasian employees who reported to Wasmer.

Based on the foregoing, the Court concludes there is sufficient evidence for a reasonable factfinder to determine that Plaintiff's suspension pending termination was due to Plaintiff's race. The statements of Jessena Williams and Dan Wasmer constitute circumstantial evidence of discrimination. When the evidence and all inferences are construed in favor of Plaintiff, the Court finds that Plaintiff is also able to show she was discriminated against due to race via the indirect method. There is at least a factual question as to whether similarly situated individuals were treated more favorably, given that there apparently was no investigation of Williams even though she was accused in the same complaint of similar misconduct. Additionally, John Dimick, a Caucasian, replaced Tiffany Clark as regional director based on McLemore's investigation. Like Plaintiff, Dimick was investigated for time abuse. IDHS's investigation determined that Dimick had significantly misrepresented his time by seeking overtime for hours he did

not work and claiming he was working at times when he was not working. Dimick was on medical leave in November 2021 when McLemore left the Division of Mental Health. Unlike with Plaintiff, IDHS did not seek to terminate Dimick. Given this dissimilar treatment between Plaintiff and two other employees along with other factors, such as Wasmer's lack of involvement in the investigation of Plaintiff, a factfinder could find that Defendant's proffered legitimate, non-discriminatory reasons are pretexts for discrimination.

As noted earlier, Plaintiff has cited several other incidents over the course of two years that she claims cumulatively constitute a materially adverse employment action. These occurrences include the reassignment of work locations, removal from a temporary assignment, an admonition to Plaintiff not to talk to other employees and to remain at her workstation, the denial of a promotion opportunity, along with other incidents. Upon viewing the evidence in a light most favorable to Plaintiff, the Court concludes that a reasonable jury could determine that these incidents, when viewed collectively, subjected Plaintiff at least to a "significantly negative alteration in [her] workplace environment," see *Alamo*, 864 F.3d at 552, to an extent constituting an adverse employment action.

### IV.   CONCLUSION

The Court finds Plaintiff's lawsuit was timely filed upon receiving her right to sue notice and there is a genuine issue of material fact as to whether Defendant discriminated against Plaintiff under Title VII. Therefore, Defendant's Motion for Summary Judgment [Doc. 26] is DENIED. A Status Conference is set for March 31, 2025 at 10:00 a.m., via videoconference before Judge Colleen R. Lawless. Prior to the status conference, the

parties shall confer regarding trial availability and whether they request that the case be referred for a settlement conference.

ENTER: March 11, 2025

_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE